AUSTIN STATE HOSPITAL and Texas
Department of Mental Health & Mental
Retardation, Appellants,

v.

Laura KITCHEN, Appellee.

No. 03–94–00390–CV.

Court of Appeals of Texas,
Austin.

June 21, 1995.

Rehearing Overruled Aug. 16, 1995.

Dan Morales, Atty. Gen., Christopher Johnsen, Asst. Atty. Gen., General Litigation Div., Austin, for appellants.

Cordelia L. Martinez, East & Martinez, P.C., Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Laura Kitchen sued and obtained a judgment against the Austin State Hospital ("ASH") and the Texas Department of Mental Health & Mental Retardation ("TDMHMR") for employment discrimination based on failure to accommodate a disability. The district court awarded Kitchen back pay, lost benefits, and attorney's fees and ordered Kitchen reinstated. ASH and TDMHMR appeal, claiming that their objections and the jury's answers to questions in the court's charge should have precluded the deemed findings necessary for Kitchen to recover on her theory that appellants failed to reasonably accommodate her employment at ASH. We will reverse the judgment of the trial court and remand the cause for new trial.

## FACTUAL BACKGROUND

Kitchen was hired to work as a mental health aide in the Children and Adolescents Psychiatric Services ("CAPS") division of ASH in December 1990. During the two-week orientation preceding her initial assignment, Kitchen, who suffers from epilepsy, had a seizure that disoriented her for several minutes.[1] Following her seizure, CAPS Administrator Eddie McQueary gave Kitchen a "Physical Capacity Report" for her doctor to complete. The neurologist who had treated Kitchen's epilepsy for ten years, Dr. Vincent Virgadamo, indicated on the form that Kitchen was capable of the job activities listed on the report,[2] provided that "seizure precautions" were taken. To clarify the meaning of "seizure precautions," McQueary gave Kitchen a second physical capacity report for Virgadamo to complete. This second report did not specifically request Virgadamo to explain the phrase "seizure precautions," but it did ask him to verify that Kitchen could be alert 100 percent of the time.

After faxing the second report, Kitchen had a telephone conversation with her father and Virgadamo in which Virgadamo expressed reservations about the report. He asked Kitchen to have someone at ASH call him. On January 24, 1991, Kitchen relayed Virgadamo's concerns to McQueary and authorized an ASH physician to contact Virgadamo. McQueary testified that he gave Kitchen a deadline of January 25 at 3:00 p.m. for the return of the second report. When the report was not returned by the deadline,

---

**1.** Testimony regarding the seizure indicates that Kitchen was "unaware" of her surroundings for 30 seconds to a minute and was disoriented for a couple of minutes after the seizure ended. Kitchen herself testified that the seizure was typical of other seizures she has had.

**2.** McQueary also apparently gave Kitchen a copy of the job description for her position, which she failed to forward to Virgadamo.

McQueary sent Kitchen to ASH's Assistant Superintendent, Adolph Supak, with the recommendation that she be terminated for insubordination. Supak terminated Kitchen's employment that day.

There was conflicting testimony at trial about whether Kitchen had requested an accommodation and the extent to which ASH accommodated employees by reassigning them to other open positions within the organization. In addition to maintaining that Kitchen never formally requested an accommodation, ASH asserted through McQueary that an accommodation was not warranted unless Virgadamo refused to sign the second physical capacity report. Alternatively, ASH argued that absent clarification from Virgadamo, it was unable to determine what accommodation was necessary to render Kitchen "otherwise qualified" for the position and whether such accommodation was reasonable.

## STATUTORY FRAMEWORK

■ Kitchen brought her complaint pursuant to the former Texas Commission on Human Rights Act (the "Act"), now found at chapter 21 of the Texas Labor Code. *See* Tex.Lab.Code Ann. §§ 21.001–.262 (West 1995).[3] Sections of the Act which form the basis for Kitchen's suit provide:

§ 21.051 Discrimination by Employer

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. . . .

§ 21.105 Discrimination Based on Disability

A provision in this subchapter or Subchapter B referring to discrimination because of disability or on the basis of disability applies only to discrimination because of or on the basis of a physical or mental condition *that does not impair an individual's ability to reasonably perform a job.*

§ 21.260 Relief for Disabled Employee or Applicant

If the affected employee or applicant for employment has a disability, a court shall consider *the undue hardship defense,* including the reasonableness of the cost of necessary workplace accommodation and the availability of alternatives or other appropriate relief.

*Id.* §§ 21.051, .105, .260 (emphasis added). Appellants initially protested that these sections of the Act did not expressly provide that an employer's failure to make reasonable workplace accommodation constituted an independent ground or theory of recovery for employment discrimination.[4] The language and purpose of the Act persuade us, however, that a cause of action based on an employer's failure to accommodate a disability was implied under the Act when Kitchen filed suit.

■ The Act has among its express purposes: (1) "the execution of the policies of Title VII of the Civil Rights Act of 1964"; (2) securing freedom from discrimination in employment transactions "for persons in this state, including persons with disabilities"; and (3) the development of the "full productive capacities of persons of this state." *Id.* §§ 21.001(1), (3), (4). Because the Act seeks to promote federal civil rights policy and because Texas has little caselaw interpreting the Act, this Court looks to analogous federal

---

**3.** At the time of trial, the Act was found at Texas Revised Civil Statutes article 5221k. Because the recodification of the Act in the Labor Code effected no substantive change in the law, we cite the current code for convenience. *See* Act of May 12, 1993, 73d Leg., R.S., ch. 269, §§ 5, 6, 1993 Tex.Gen.Laws 987, 1273.

**4.** When it recodified the Act in the Labor Code, the legislature concurrently amended the Act to make an employer's failure or refusal to furnish

reasonable workplace accommodation an unlawful employment practice. *See* Act of May 14, 1993, 73d Leg., R.S., ch. 276, § 5.17, 1993 Tex. Gen.Laws 1285, 1288–89. However, the amended provisions apply only to complaints filed with the Commission on Human Rights on or after September 1, 1993. *Id.* at 1292. Kitchen filed her complaint with the Commission on Human Rights on February 8, 1991.

law when appropriate. *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ). The Texas Act is broader than Title VII, which does not apply by its terms to disability or handicap discrimination. *See* 42 U.S.C. §§ 2000e–2(a), 2000e–16(a) (1988) (prohibiting discriminatory employment practices based on race, color, religion, sex, or national origin); *Stroud v. Delta Air Lines, Inc.,* 544 F.2d 892, 894 (5th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977) (Title VII does not ban all discriminations, only those specifically enumerated). Instead, federal policy regarding employment discrimination based on disability is found in the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b (1988 & Supp. V 1993), and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101–12213 (Supp. V 1993). Consequently, we look to the most closely analogous provisions of these laws in interpreting our state's Act with regard to disability discrimination.[5]

Our review of the relevant federal statutes convinces us that the jurisprudence developed under section 504 of the Rehabilitation Act is most applicable to Kitchen's case. *See* 29 U.S.C. § 794 (1988 & Supp. V 1993).[6] Section 504 provides in pertinent part: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in ... any [federally funded] program or activity...." *Id.* § 794(a) (1988). Sections 21.051 and 21.105 of the Texas Act make it an unlawful employment practice for an employer to discharge a disabled person on the basis of a disability when the disability does not impair the individual's ability to reasonably perform a job. Tex.Lab.Code Ann. §§ 21.051, .105 (West 1995). Facially, the Act more closely resembles section 504's broad prohibition against discrimination than the prohibitions of other federal statutes that explicitly address an employer's failure to accommodate. For example, the ADA includes provisions regarding "reasonable accommodation," which resemble the Texas Act after its amendment in 1993, but do not parallel as closely the wording of the Texas statute that governed Kitchen's cause of action.[7] However, even section

---

5. Although they provide distinct statutory bases for bringing claims of employment discrimination, federal courts have looked to Title VII precedent in interpreting the Rehabilitation Act of 1973. *See, e.g., Barth v. Gelb,* 2 F.3d 1180, 1183–84 (D.C.Cir.1993) (looking to Title VII precedent on religious discrimination). In turn, the ADA adopts the powers, remedies, and procedures of Title VII and directs the agencies with enforcement authority under the ADA to "develop procedures to ensure that administrative complaints filed under [the ADA] and under the Rehabilitation Act of 1973 are dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards." 42 U.S.C. § 12117(b) (Supp. V 1993); *see also* 29 U.S.C. §§ 791(g), 794(d) (synchronizing standards used to determine violations under the Rehabilitation Act with those employed under the ADA).

6. As codified, sections 501 and 504 of the Rehabilitation Act of 1973 appear at 29 U.S.C. §§ 791 and 794, respectively. Because most cases refer to these sections by their act rather than code designations, we will follow this convention.

7. The ADA includes in its definition of "discrimination" a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

disability." *See* ADA, 42 U.S.C. § 12112(b)(5)(A) (Supp. V 1993). The ADA also defines "qualified individual with a disability" as an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Finally, the ADA explicitly defines "reasonable accommodation." *See id.* § 12111(9). Because the ADA refers directly to the issue of "reasonable accommodation," it more closely resembles the Texas provisions following the enactment of § 5.17 of the Labor Code.

Section 501 of the Rehabilitation Act is also inapposite as a guide because it imposes an affirmative duty on employers which finds no counterpart in the Texas Act. Section 501 requires *federal* employers to submit an "affirmative action program plan for the hiring, placement and advancement of individuals with disabilities" including "a description of the extent to which *and methods whereby* the special needs of employees who are individuals with disabilities are being met." 29 U.S.C. § 791(b) (1988) (emphasis added); *see also Mantolete v. Bolger,* 767 F.2d 1416, 1421 (9th Cir.1985) (observing § 501's explicit requirement that accommodation of the handicap be considered in determining handicapped person's qualification for employment); *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 307

504 incorporates the question of reasonable accommodation as part of the inquiry into whether an individual is "otherwise qualified." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987); *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991). We agree with the Fifth Circuit that the Texas Act's mandate that the individual be able to "reasonably perform a job" requires the same inquiry. *See Chiari v. City of League City*, 920 F.2d 311, 319 (5th Cir.1991).

## THE COURT'S CHARGE

The court submitted three questions to the jury. The first two asked the jury to decide issues related to Kitchen's claim. Relevant portions of the questions and accompanying instructions are:

*Question No. 1*

> Do you find from a preponderance of the evidence that [ASH and TDMHMR] discharged [Kitchen] because of her disability? A "yes" answer must be based on a preponderance of the evidence.
>
> You are instructed that [Kitchen] has a disability under Texas law.
>
> You are further instructed that "because of disability" means discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job.
>
> ANSWER: No.
>
> If you answered "no" to Question No. 1, please answer Question No. 2. Otherwise, go on to Question No. 3.

*Question No. 2*

> Do you find from a preponderance of the evidence that [ASH and TDMHMR] could not have reasonably accommodated [Kitchen] in her employment at the Austin State Hospital? Answer "They could not have" or "They could have."

> An answer of "They could not have" must be based on a preponderance of the evidence. If you do not find a preponderance of the evidence supports an answer of "They could not have," then answer "They could have."
>
> In connection with this issue, you are instructed that "reasonable accommodation" means steps, modifications, or adjustments that would permit a person to perform a job with safety and efficiency.
>
> You are further instructed that in order to find that a person could not perform a job with safety, there must be a reasonable probability that her job performance would result in substantial harm to herself or others.
>
> You are further instructed in connection with this issue that factors in determining whether a reasonable accommodation of a person with a disability can be made include reasonableness of the cost of any necessary workplace accommodation and the availability of alternatives.
>
> ANSWER: They could have.

ASH and TDMHMR raised several objections to this charge at the initial charge conference. First, they objected to the inclusion of question 2, arguing that the statute as it existed at the time of Kitchen's suit did not impose a requirement of reasonable accommodation upon the employer. Second, appellants objected to the instruction that the jury answer question 2 even if they answered "no" to question 1. Appellants insisted that the jury should reach question 2 *only if* they found in question 1 that Kitchen had been discharged because of her disability. In effect, appellants' objections demonstrate that they understood the issue in question 2 to be an affirmative defense, not a second theory under which Kitchen could prove discrimination based on a disability.[8] This impression is strengthened by appellants' request for a

---

(5th Cir.1981) (same). As appellants note, this affirmative duty to create an action program under § 501 may shift the burden to the defendant employer to show that no reasonable accommodation was possible. *See Overton v. Reilly*, 977 F.2d 1190, 1194 (7th Cir.1992).

**8.** Appellants made a further objection in regard to question 3 that reinforces this interpretation.

Question 3 asked the jury to award Kitchen attorney's fees if they answered either "yes" to question 1 *or* "they could have" to question 2. Appellants requested the instruction to read that the jury proceed to question 3 only if they answered question 1 affirmatively *and* found the appellants could have accommodated Kitchen in question 2.

trial amendment to their pleading adding the affirmative defense of "undue burden," which the court granted.

After a lunch recess, but before the jury was returned, appellants again objected to the court's charge. Apparently realizing that question 2 referred to a separate theory of recovery and not an affirmative defense, appellants objected that the burden of proof on the accommodation issue in question 2 improperly rested with them and not with Kitchen. The court overruled the objection, saying that it came too late or should be overruled on the merits.

After the jury returned its verdict, Kitchen moved for judgment and requested a supplemental finding from the trial court that "[ASH and TDMHMR] failed reasonably to accommodate [Kitchen] in her employment at Austin State Hospital." Kitchen averred as required under Texas Rule of Civil Procedure 279 that this finding was a necessary element of her theory of recovery for failure to provide reasonable accommodation, that the finding was supported by legally and factually sufficient evidence, and that neither party requested submission nor objected to the nonsubmission of this element. *See* Tex. R.Civ.P. 279. Appellants responded that Kitchen was asking the court to deem a theory of recovery to which they had objected, and which Kitchen had waived by omitting it from the charge. *See Ramos v. Frito-Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990). Appellants further requested that the trial court disregard the jury's findings to questions 2 and 3, arguing that the jury's answer to question 1 resolved the issue of their liability against Kitchen and that question 2 was no more than an affirmative defense

which became irrelevant. The trial court granted Kitchen's motion for supplemental findings and rendered judgment in her favor.

## DISCUSSION

This appeal asks us to decide (1) which party bears the burden of proof on the issue of reasonable accommodation in an action for employment discrimination based on a theory of failure to accommodate, (2) whether that burden was properly allocated in this case, and if not (3) whether error was properly preserved so as to prevent a deemed finding on the issue by the trial court.

■■■ The United States Supreme Court in two decisive cases has carefully outlined the allocation of the burdens of proof and production that apply to Title VII discrimination cases. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629 (Tex.1995). Key to our resolution of the instant dispute is the Court's holding that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. As the Court explained, however, the intermediate burdens of production alternate between the plaintiff and the defendant and serve to eliminate claims at an earlier stage if no fact dispute exists that requires the court or jury to reach this ultimate question. *Id.* at 253–55, 101 S.Ct. at 1093–95.[9]

---

**9.** In *Burdine* the Court applied these burdens of proof and production in a case alleging disparate treatment discrimination, i.e., the blatant discrimination that stems from simple bias against the characteristic in question. The plaintiff must first establish her prima facie case, demonstrating by a preponderance of the evidence that she was qualified for the position and that the circumstances of termination give rise to an inference of unlawful discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. If established, the prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Id.* at 254, 101 S.Ct. at 1094. The burden then shifts to the defendant employer to produce evidence sufficient to raise a genuine issue of fact that its employment action was not the result of discriminatory animus but instead was motivated by a legitimate reason. *Id.* In so doing, the defendant employer rebuts the presumption raised by the plaintiff's prima facie case and frames the factual issue requiring ultimate resolution by the trier of fact. The burden of production then returns to the plaintiff and merges with her ultimate burden of persuading the trier of fact that the employer's proffered reason for its action is mere pretext and that she has been the victim of unlawful discrimination. *Id.* at 255, 101 S.Ct. at 1094–95.

 The *Burdine* system of burden allocation clearly applies to those situations in which an employer denies that an individual's disability played any role in its employment decision. *See, e.g., Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993). In many cases of disability discrimination like Kitchen's, however, the employer may concede that the employee's disability played a role in its employment decision, but the parties disagree whether the disability impedes the employee's ability to perform the "essential functions" of the job or whether a reasonable accommodation is feasible that would enable the employee to perform the job. *Id.* The *Burdine* test is somewhat inappropriate in these situations because the propriety of the employment decision turns on the objective claims of the parties that accommodation was or was not possible rather than on the employer's subjective motivation. *Id.* Nonetheless, the basic principle is constant: the burden remains with the plaintiff to prove her case of employment discrimination by a preponderance of the evidence. *Id.; see also Hinds,* 904 S.W.2d at 637; *Mason v. Frank,* 32 F.3d 315, 318 (8th Cir.1994).

 In a cause of action alleging failure to accommodate, part of plaintiff's burden is to demonstrate that she is "otherwise qualified" for the position from which she was excluded. She may show this qualification in one of two ways: (1) by proving that she can perform all essential job functions without modifications or accommodations, or (2) that some reasonable accommodation by the employer would enable her to perform the job. 29 C.F.R. § 1613.702(f) (defining qualified handicapped person under § 504 of Rehabilitation Act as one who "with or without reasonable accommodation can perform the essential functions of the position in question without endangering the health and safety of the individual or others"); *Arline,* 480 U.S. at 288 n. 17, 107 S.Ct. at 1131 n. 17; *Mantolete v. Bolger,* 767 F.2d 1416, 1423 (9th Cir.1985). Although there appears to be consensus among the federal courts to this ex-

tent, opinions diverge on whether the plaintiff or the defendant employer then bears the burden of persuading the trier of fact that accommodations are or are not possible. *Compare Barth,* 2 F.3d at 1186–87 *and Chandler v. City of Dallas,* 2 F.3d 1385, 1395 (5th Cir.1993) *with Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir.1981) (burden of proving inability to accommodate always remains on employer because employer has greater knowledge of essentials of job and can obtain advice concerning accommodations from private and government sources).[10] One court has suggested that the disparity may result from the obligation of the government to undertake affirmative action to accommodate the disabled under section 501 of the Rehabilitation Act, an obligation not imposed under section 504 on programs receiving federal funds. *See Overton v. Reilly,* 977 F.2d 1190, 1194 (7th Cir. 1992). However, even that court acknowledges a lack of consensus on the allocation of burden to prove reasonable accommodation under section 504. *Id.*

 The issue is further complicated by the availability of the "undue hardship" defense. Once the plaintiff has shown that a method of accommodation would allow her to perform the essentials of the job, the defendant employer has two options: it may either attempt to refute the plaintiff's evidence by demonstrating that the plaintiff would be unable to perform the essentials of the job despite the proposed accommodation, or it may assume the burden of proving that the proposed accommodation imposes on it an undue financial, logistic, or administrative burden. *See Barth,* 2 F.3d at 1186–87. As with other affirmative defenses, the defendant bears the burden of proof for the undue hardship defense. *Id.* However, as the *Barth* court noted, "a grey area" arises if a proposed accommodation is both unduly burdensome and unreasonable. *Id.* We believe the confusion is lessened if the "reasonableness" of the accommodation is evaluated in terms of the plaintiff's ability to do the job,

---

10. Although *Prewitt* was a § 501 case, its rationale for placing the burden of proving inability to accommodate on the employer was based on an article discussing the burden under a § 504

cause of action. *Prewitt,* 662 F.2d at 308 (citing Donald J. Olenick, *Accommodating the Handicapped: Rehabilitating Section 504 After Southeastern,* 80 Colum.L.Rev. 171, 187–88 (1980)).

while the question of "undue hardship" is linked to the employer's financial and organizational ability to adopt the proposed modifications.

■■■■■ Under this analysis, the plaintiff clearly retains the burden of proving by a preponderance of the evidence that an accommodation is possible that would enable her to perform the "essential functions" of the position she holds or seeks. *Id.; Chandler,* 2 F.3d at 1395; 29 C.F.R. §§ 1613.702(f), .704(a)–(b). By demonstrating that she could be reasonably accommodated, the plaintiff proves that she is "otherwise qualified" for or can, under the Texas Act, "reasonably perform a job." Tex.Lab. Code Ann. § 21.015; *Chiari,* 920 F.2d at 319.

The court's charge in the instant cause essentially collapsed into one question the issue of reasonable accommodation, on which the plaintiff bears the burden of proof, and the issue of undue hardship, an affirmative defense on which the defendant bears the burden of proof. The court subsumed the question of whether Kitchen was "otherwise qualified" by instructing the jury that a reasonable accommodation was one that "would permit a person to perform a job with safety and efficiency" and without "substantial harm to herself or others." However, the court simultaneously instructed the jury to consider the cost of the accommodation and availability of alternatives in deciding whether an accommodation could be made—factors a defendant would argue in support of its affirmative defense that a particular accommodation is unduly burdensome.

■■■■ Although the caselaw suffers from a lack of clarity in setting forth the elements and burdens in a discrimination action based on a failure to accommodate, and although appellants failed to object to the charge as artfully as they might have, we believe their objections were sufficient to preserve error. The objections clearly demonstrate that appellants believed question 2 to be an affirmative defense. Appellants find further support for their contention because the question placed the burden of proof on them and because the instruction on the cost of accommodation and availability of alternatives tracks the statutory language of section 21.260, instructing the court to consider "the undue hardship *defense.*" *See* Tex.Lab.Code Ann. § 21.260 (emphasis added).

■■■■ Moreover, question 1 broadly asked whether appellants discharged Kitchen because of her disability, with instructions tracking the language of sections 21.051 and 21.105. Once their objection that the Act contained no accommodation requirement until the 1993 amendments was overruled, appellants may have believed that question 1 incorporated both disparate treatment and failure to accommodate theories of recovery, with question 2 remaining their affirmative defense.[11] As appellants cogently argue, if question 1 incorporates the failure to accommodate theory of recovery, the jury's negative finding on this question absolves them of liability. Even Kitchen admits in a post-submission brief that "[f]ailure to make reasonable accommodation is itself disability discrimination." Kitchen's petition alleged only general "disability discrimination" without outlining the separate theories of disparate treatment and failure to accommodate. Therefore, although we do not believe that Kitchen's failure to amend her petition to reflect her two theories precludes her recov-

---

11. Appellants followed with a request for an additional instruction to question 1, citing *Chevron v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987), for the proposition that no cause of action exists under § 21.051 if a person's disability impairs her ability to do the particular job for which she was hired. Apparently, appellants were attempting to limit the jury's consideration of any accommodation based on job reassignment. This request further indicates that they may have believed question 1 encompassed the theory of failure to accommodate.

We also note that although an employer need not find another job for a disabled employee no longer qualified for her present position, under federal law some job reassignment or assignment to "alternative employment opportunities" consistent with the employer's existing policies may be required. While reserving opinion on the accuracy or desirability of the policy, we note some authority suggests an employer's duty of accommodation may not extend this far under the Texas Act. *Compare Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19 *with Chiari,* 920 F.2d at 319 (citing *Chevron,* 745 S.W.2d at 318, for proposition that Texas Act does not impose duty of reassignment).

ery under the statute at that time, her failure to separately plead the theories certainly lends credence to appellants' interpretation of question 1 as incorporating both theories. However, because question 2 related clearly to neither an affirmative defense nor to the special issue of accommodation, we decline to render judgment for appellants on the basis of the jury's answer to question 1. *See Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex.1994). We therefore overrule appellants' first point of error urging that the trial court erred by refusing to disregard the jury's answers to questions 2 and 3.

■ We do believe, however, that Kitchen bore the burden of proving that reasonable accommodation was possible in order to show that she was "otherwise qualified," and that appellants were entitled to raise the affirmative defense that the accommodation she proposed was unduly burdensome. Given the confusion in the statute, caselaw, and instructions in this case, it is not surprising that appellants failed to realize that question 2 embodied Kitchen's second theory of recovery, not their affirmative defense, and failed to object to the misplaced burden of proof at the original charge conference. The question remains whether the objection was timely.

■ Texas Rule of Civil Procedure 272 requires the court to allow counsel for the parties "a reasonable time" to inspect and raise objections to the charge. The rule establishes as an outside limit that all objections be presented "before the charge is read to the jury." Tex.R.Civ.P. 272. Kitchen argues that the trial court has discretion to set the time allowed for objections to the jury charge. *See Hargrove v. Texas Employers' Ins. Ass'n*, 332 S.W.2d 121 (Tex.Civ.App.—Amarillo 1959, no writ); *Burton v. Williams*, 195 S.W.2d 245 (Tex.Civ.App.—Waco 1946, writ ref'd n.r.e.); *Federal Underwriters Exch. v. Tubbe*, 180 S.W.2d 473 (Tex.Civ. App.—Amarillo), *rev'd on other grounds*, 183 S.W.2d 444 (Tex.1944). Although the cases Kitchen cites generally support the proposition that a trial court has discretion to set the amount of time counsel has to inspect and object to the charge, those cases are not on point. In *Hargrove* and *Burton*, counsel failed to raise objections or request instruc-

tions until the court had begun to read the charge to the jury. *Hargrove*, 332 S.W.2d at 123; *Burton*, 195 S.W.2d at 249. At that point, under the current rules, the trial court no longer had discretion to consider the requests or objections. *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 884–85 (Tex.App.—Dallas 1991, writ denied). In *Tubbe*, the court found that appellant failed to show harm because he was able to prepare all of his objections in the hour and a half the court allowed. *Tubbe*, 180 S.W.2d at 477.

■ The purpose of Rule 272 is to allow the court to correct any errors in the charge before submitting it to the jury. *Methodist Hosps.*, 806 S.W.2d at 884. In the instant cause, the court did not set in advance a deadline for submitting requests or objections, and appellants raised their objections before the jury returned to receive the charge. Moreover, the trial court did not rely solely on a procedural technicality in overruling appellants' objection. Although it admonished appellants that the objection came too late, the court also stated that the objection was overruled even if timely. Because the trial court clearly considered the substance of appellants' complaint, we believe that appellants have satisfied the requirement for preserving error in the jury charge as articulated by the Texas Supreme Court. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is *whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.*") (emphasis added); *Hinds*, 904 S.W.2d at 638; *cf. Alaniz v. Jones & Neuse, Inc.*, 878 S.W.2d 244, 245 (Tex.Civ.App.—Corpus Christi 1994) (challenge to charge not preserved despite *Payne*, because plaintiff failed to follow specific rules for requests in Texas Rule of Civil Procedure 273).

■ Because appellants' objection to the charge was sufficient to preserve error on Kitchen's burden to prove that she was otherwise qualified for her position with rea-

sonable accommodation, we hold that the trial court erred in deeming her requested finding that appellants failed to reasonably accommodate her employment at ASH. *See Payne*, 838 S.W.2d at 241 (finding on element of plaintiff's case cannot be deemed in her favor if opposing party objected to omission of special issue); *see also Spencer*, 876 S.W.2d at 157 (proper objection to material issue in defective charge entitles party to new trial); *Dittberner v. Bell*, 558 S.W.2d 527, 534 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Contrary to Kitchen's assertions, the evidence did not establish conclusively that appellants failed to reasonably accommodate her; although the jury certainly may have determined on this record that ASH's conduct in Kitchen's dismissal lacked good faith, the burden was Kitchen's to persuade the jury that reasonable accommodations were possible that would have rendered her otherwise qualified for her position. Similarly, issues relating to appellants' affirmative defense of "undue burden" should have been more clearly articulated and allocated to a separate question. Accordingly, we sustain appellants' second point of error.

### CONCLUSION

We hold that Kitchen bore the burden of proving that reasonable accommodation was possible as part of her burden of establishing that she was otherwise qualified for her position at ASH. Appellants properly attempted through their objections to segregate the issue of reasonable accommodation on which Kitchen bore the burden of proof and their affirmative defense that any accommodation was unduly burdensome. Because appellants' objections were sufficient to preserve error, the trial court should not have deemed the finding that appellants failed to reasonably accommodate Kitchen. We therefore reverse the judgment of the trial court and remand the cause for new trial on Kitchen's claim of failure to accommodate.