Pat HOLT, Appellant,

v.

LONE STAR GAS COMPANY, Appellee.

No. 2–94–200–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 15, 1996.

Rehearing Overruled March 28, 1996.

Joe E. Shaddock, Wichita Falls, for appellant.

Susan Laurea LaSalle, Thomas M. Callan, Dallas, for appellee.

Before RICHARDS, J., and CHUCK MILLER, J. (Sitting by Assignment), and JOE SPURLOCK, II, J. (Retired) (Sitting by Assignment).

### OPINION ON REHEARING

CHUCK MILLER, Justice.

Appellant Pat Holt's motion for rehearing is granted. Our prior opinion of August 10, 1995 is withdrawn, and we substitute the following opinion.

Holt appealed the granting of summary judgment in favor of Lone Star Gas Company. Holt originally brought suit alleging that his discharge from Lone Star was occasioned solely on the fact that he is a "handicapped person," which was a violation of the Texas Commission on Human Rights Act ("TCHRA"). Tex.Rev.Civ.Stat.Ann. art. 5221k (Vernon 1985). On rehearing, Holt now argues that this court must instead apply the definition for a person with a "disability," under Tex.Rev.Civ.Stat.Ann. art. 5221k § 2.01(4) (Vernon 1989).[1] Germane to this cause of action, the definition of "disability," not the term or definition of "handicapped," was in effect at the time this cause of action arose. Thus, we will now apply the definition for a person with a disability, withdraw our previous opinion, and sustain Holt's point of error.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

In 1990, appellee Lone Star Gas Company adopted a safety program to prevent or re-

---

1. The term disability was substituted for the term handicapped by Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 1186, § 3, 1989 Tex.Gen.Laws 4824, 4824–25. The entire Commission on Human Rights Act was repealed by Act effective Sept. 1, 1993, 73rd Leg., ch. 269, § 5(1), 1993 Tex.Gen.Laws 987, 1273. The subject, with major changes, was recodified in Tex.Labor Code Ann. §§ 21.001–.306 (Vernon Pamph.1996).

2. We note that on rehearing, we are allowing Holt to apply a statute that was not cited in any of his pleadings to the trial court, including his motion for new trial. Holt consistently argued that he suffered discrimination, regardless of the fact that he cited the incorrect statute defining his disability to the trial court. Lone Star, on the other hand, did not argue that Holt was not handicapped under the cited definition until the original appeal. We originally held that Holt did not fall under the erroneously pled definition of handicapped. Allowing Holt to now rely on the correct legal definition on rehearing would be less analogous to allowing a party to raise a issue not originally presented at trial than our former holding, which upheld Lone Star's reply argument that was first raised on appeal. See Travis v. City of Mesquite, 830 S.W.2d 94, 100 (Tex. 1992) (in an appeal from summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court, and a summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment.)

duce the risk of vehicular accidents. The program required specific Lone Star employees to secure and maintain a commercial driver's license (CDL). Indirectly, the program established certain physical standards for Lone Star employees who operate commercial motor vehicles on public roads. Lone Star contends that this includes construction and maintenance workers. The program itself was patterned after safety regulations promulgated by the United States Department of Transportation.[3] If an employee did not meet these standards, and thus could not qualify for a CDL, then he essentially was not eligible or no longer eligible for the job.

Of particular importance to the instant appeal are the medical standards for a CDL. Because of the federal CDL requirements, a commercial driver must have a minimum distant visual acuity of 20/40 in each eye, without corrective lenses, and a minimum peripheral field of vision of seventy degrees in each eye, with corrective lenses. 49 C.F.R. § 391.41(b)(10) (1993).

Holt suffers from a congenital condition of atrophy of the optic nerve heads. As a result, Holt's visual acuity is 20/200 in his right and left eyes, as well as 20/200 with both eyes together. Although his condition is not degenerative, Holt's vision cannot be readily improved by conventional lenses. Holt can improve his visual acuity with the aid of monocular telescopic lenses, but in the process of magnifying the distant image, telescopic lenses reduce Holt's peripheral field of vision to twenty degrees on either side. According to Joe C. Hayley, an optometrist, the condition prohibits Holt from qualifying for a CDL, even with the assistance of monocular lenses.

Holt filed suit alleging that his visual impairment qualified as a handicap under the TCHRA. Holt also claimed that Lone Star intentionally discriminated against him by discharging him from employment because of his handicap.

After asserting a general denial, Lone Star filed a motion for summary judgment arguing that, as a matter of law, Holt "was terminated from his employment ... not because of his alleged handicap disability, but, because [he] failed to meet the requirements of company regulations." Upon reviewing Lone Star's motion and the summary judgment evidence, the trial court granted summary judgment in favor of Lone Star.

In our original opinion,[4] we affirmed the trial court because Holt's vision impairment did not rise to the level of a "handicap" under the Texas Civil Statutes as interpreted by the Texas Supreme Court.[5] In his motion for rehearing, Holt correctly asserts that under the statute in force at the time he was fired, a cause of action can be raised under the TCHRA code if a person suffers from a disability, as opposed to the prior more stringent requirement that they be considered handicapped.[6]

Holt contends that the trial court erred in granting summary judgment because the summary judgment evidence conclusively established the existence of a genuine issue of material fact. In response, Lone Star argues that no fact issues were left unresolved because the company's decision to fire Holt was supported by a nondiscriminatory reason. As evidence of a discriminatory motive, Holt claims that before the scheduled eye exam, his direct supervisor stated, "we won't have a

---

**3.** The Department of Transportation regulations directed that "every person who operates" a commercial motor vehicle must obtain a commercial driver's license. 49 C.F.R 383.3 (1993). In contrast, Lone Star's program required *all* construction and maintenance workers to "secure and maintain" a commercial driver's license.

**4.** *Holt v. Lone Star Gas Co.,* No. 2–94–200–CV (Tex.App.—Fort Worth, Aug. 10, 1995, n.w.h.).

**5.** The Texas Supreme Court adopted a very restrictive definition of "handicap" for purposes of

the TCHRA. *Chevron v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987). They also stated:

> under article 5221k, a person may not sue if his handicap impairs his ability to do *that* particular job, in order for a disability to be considered a handicap in the first place it must be one which is generally perceived as severely limiting him in performing work-related functions in general.

*Id.*

**6.** *See* footnote 1.

**304**

place for you if you don't get the commercial license." Hence, Holt takes the position that Lone Star created a fictitious reason for dismissal merely as a "subterfuge" to avoid a wrongful discharge suit.

## SUMMARY JUDGMENT

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex.1972). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

To prevail on summary judgment, Lone Star must establish that no genuine issue of material fact exists concerning any of the essential elements of Holt's cause of action, *Goldberg v. United States Shoe Corporation*, 775 S.W.2d 751, 754 (Tex.App.— Houston [1st Dist.] 1989, writ denied), or it must conclusively establish all elements of an affirmative defense. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984).

7. Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 1186, § 11, 1989 Tex.Gen.Laws 4824, 4828–29

## EMPLOYMENT DISCRIMINATION

The TCHRA has among its express purposes the execution of the policies of Title VII of the Civil Rights Act of 1964 securing freedom from employment discrimination, but specifically adds "persons with disabilities," in order to promote the development of the "full productive capacities of persons" in Texas. *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87–88 (Tex.App.—Austin 1995, n.w.h.) (citing the TCHRA). Because the Act seeks to promote federal civil rights policy and because Texas has little caselaw interpreting the Act, we can look to analogous federal precedent when appropriate. *Id. See also Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (op. on reh'g).

Section 5 of the TCHRA described acts that constitute employment discrimination. Under section 5.01(1), it was an unlawful employment practice for an employer,

to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment *because of* race, color, *disability*, religion, sex, national origin, or age . . . .[7]

In our original opinion, we looked to *Elstner v. Southwestern Bell Telephone Co.*, and *Chevron Corp. v. Redmon*, to hold that Holt must establish a prima facia case that he: (1) was a "handicapped person"; (2) was discriminated against "because of handicap"; and (3) was discharged under circumstances that would give rise to an inference that his discharge was based solely on his handicap. *Holt v. Lone Star Gas Co.*, No. 2–94–200–CV, slip op. at 7 (Tex.App.—Fort Worth, Aug. 10, 1995, n.w.h), relying on *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1345 (S.D.Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988) and *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987) (construing the term "handicapped" under the TCHRA).

(repealed 1993) (emphasis added).

While the 1989 changes in the TCHRA have lowered the threshold at which we will find discrimination from a person who is handicapped to a person who merely suffers from a disability, we find that the logic of the *Elstner* holding still applies. Once Holt establishes a prima facie case that he was discriminated against because of his disability, Lone Star would then have the burden of proving that Holt was not discharged because of the disability. *Elstner*, 659 F.Supp. at 1345–46.

The TCHRA defines a disability as "a mental or physical impairment that *substantially limits at least one major life activity*...."[8] We agree that his visual impairment "substantially limited" at least one major life activity because it prevented him from obtaining the CDL that Lone Star argues is required for his job. Hence by definition, Holt had a disability.

However, section 1.04(b) of the TCHRA also provided that "[i]n Article 5, '*because of disability*' or 'on the basis of disability' refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job."[9] Consequently, if Holt's disability impaired his ability to reasonably perform the job in question, it would not have been an unlawful practice to have discharged Holt from his position.

Holt was employed as a construction and maintenance worker at Lone Star from April 1, 1989 through August 23, 1991. According to his employment records, Holt received no warnings or reprimands concerning the performance of his duties. In fact, during his brief tenure with Lone Star, Holt received at least three performance-based raises.

On August 22, 1990, Holt received notice of Lone Star's newly enacted safety program that required him, as a construction and maintenance worker, to obtain a CDL. In April of 1992, the U.S. Department of Transportation Federal Highway Administration mandated that all drivers who operate a commercial motor vehicle be required to pass the requirements for a CDL. Lone Star's Safety Compliance Coordinator notified the appropriate personnel of the new regulation, and requested that all Lone Star commercial drivers be tested by September of 1991. In a subsequent memo, all construction and maintenance employees were asked to comply with the federal regulation under the apparent assumption that they would all potentially have to operate a commercial motor vehicle in the performance of their jobs.

However, in his summary judgment affidavit, Holt calls into question the requirement for a CDL in two ways. First, he calls into question his need to drive at all in connection with his job. Second, he notes that the trucks driven by Lone Star construction and maintenance workers are not commercial motor vehicles as defined under the applicable federal regulations. We find no evidence in the record which proves as a matter of law that these trucks are in fact commercial motor vehicles under these federal regulations. *See* 49 C.F.R. 383.5 (1993).

If the vehicles in question are not commercial motor vehicles, then federal law does not require Lone Star construction and maintenance workers to have a CDL. If Holt was not required to have a CDL, then the company's adherence to an inapplicable federal regulation resulted in Holt's discharge for a disability which did not impair his ability to perform his job. Thus, resolving this issue in Holt's favor, there is an inference that he was impermissibly discharged.

Based on the summary judgment record before us, we hold that issues remain for the trier of fact and, consequently, the trial court erred in granting the summary judgment. Point of error one is sustained, and the case is remanded to the trial court.

---

8.  Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 1186 § 1, 1989 Tex.Gen.Laws, 4824, 4824 (repealed 1993) (emphasis added).

9.  Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 1186, § 11, 1989 Tex.Gen.Laws 4824, 4824 (repealed 1993) (emphasis added).