### Michael V. RIOS

v.

### INDIANA BAYER CORPORATION.

Civil Action No. G–96–89.

United States District Court,
S.D. Texas,
Galveston Division.

June 3, 1997.

Syd Phillips, Houston, TX, for Plaintiff.

Jack Edward Urquhart, Holtzman & Urquhart, Houston, TX, Andrea Marie Johnson, Houston, TX, for Defendant.

#### *ORDER*

KENT, District Judge.

In this employment discrimination case, Plaintiff brings claims under the Texas Commission on Human Rights Act ("TCHRA"),

alleging that Defendant discriminated against him on the basis of a disability when it denied him a position as a production technician at its Baytown, Texas chemical plant. Now before the Court are Plaintiff's Motion for Partial Summary Judgment of April 4, 1997 and Defendant's Motion for Summary Judgment of April 18, 1997. For the reasons set forth below, Plaintiff's Motion is **DENIED**, and Defendant's Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff began working for Defendant, then known as Mobay Corporation, in 1981 as a production technician in Defendant's Baytown, Texas chemical plant. In October, 1982, Plaintiff was involved in a motorcycle accident in which he suffered severe injuries consisting of a traumatic, nearly complete amputation of his lower left leg, an open knee disarticulation, and a fracture dislocation of the left hip. Plaintiff's left leg was ultimately surgically amputated above the knee. After his surgery, Plaintiff was fitted with a prosthetic device, which enabled him to walk. The prosthesis is a full-length one that extends to his pelvis and provides him with an artificial knee, ankle, and foot.

Plaintiff returned to work at the plant approximately nine months after the accident and worked as a laboratory technician in the Makrolon area of the plant. While at this position, Plaintiff experienced some problems with his prosthesis irritating his leg and was instructed by his doctor to avoid standing for long periods of time. Plaintiff's problems with his prosthesis continued, and on May 1, 1984, Plaintiff's doctor sent a letter to Defendant's Medical Department restricting Plaintiff's work schedule and activities. In this letter, Plaintiff's doctor instructed the Medical Department that Plaintiff should not work more than an eight hour day, should not stand for more than four hours, should not lift anything heavier than fifty pounds, should not climb more than one flight of stairs, and should not climb ladders. At the end of May, 1984, Plaintiff was transferred from the laboratory technician position to a clerical position, in which he would be seated most of the time. During mid–1984, Plaintiff missed approximately two months of work due to surgery he had to remove the flap of skin that had been irritating his leg. Plaintiff returned to his clerical position after this surgery and has since that time received satisfactory job reviews and pay increases.

In 1994, Plaintiff applied for a position as a production technician in the coatings area of the plant. Under Defendant's policy, an employee submits a bid for an open position and Defendant reviews the employee's qualifications, medical restrictions, and disciplinary history and either accepts or rejects the bid. On June 14, 1994, Plaintiff received a memorandum from R.L. Swanagan stating that Plaintiff's bid for the production technician position had been rejected on the grounds that Plaintiff was not permitted to work in the unit because of physical limitations. Plaintiff contacted Mr. Swanagan to ask why he was denied the position, and Mr. Swanagan responded that after consulting with the company doctor, Dr. Holsomback, it was determined that Plaintiff was physically limited in climbing stairs and ladders. At this time, the May 1, 1984 letter from Plaintiff's doctor restricting his work activity was still in Plaintiff's company medical file and had not been nullified or modified. A month after Plaintiff's bid was rejected, he, Dr. Holsomback, and Mr. Robbins, a Human Resources employee, met to discuss why his bid was rejected. At this meeting, Dr. Holsomback informed Plaintiff that he would have to provide medical documentation from his own doctor to clear the medical restrictions in his file. Mr. Robbins provided Plaintiff with a job description form for the production technician position for Plaintiff to present to his doctor to assist him in evaluating Plaintiff's ability to fulfill the job requirements. Plaintiff claims that the form was useless to the doctor because it did not reflect the physical requirements of the job. Plaintiff never did clear the medical restrictions in his file.

In August, 1994, Plaintiff filed an EEOC charge claiming that he was denied a promotion to the position of production technician on the basis of his having a disability. Plaintiff filed suit against Defendant in state court in January, 1996, alleging that Defendant violated the TCHRA, Tex. Labor Code

Ann. § 21.001 et seq. (Vernon 1996), by denying him the production technician position. Defendant removed the case to this Court on February 8, 1996 on diversity grounds. Now before the Court are Motions for Summary Judgment by both parties. In his Motion, Plaintiff seeks a finding of liability on the part of Defendant. In its Motion, Defendant seeks a dismissal of Plaintiff's entire cause of action on the grounds that he cannot establish a prima facie case of unlawful discrimination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsu-*

*shita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. DISCUSSION

Plaintiff seeks to impose liability on Defendant for unlawful discrimination in employment pursuant to section 21.051 of the TCHRA. Section 21.051 provides:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

TEX. LAB.CODE ANN. § 21.051 (Vernon 1996). The TCHRA seeks to promote the policies of federal civil rights laws, specifically Title VII, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. *See id.* § 21.001. For this reason, and because Texas has little case law interpreting the TCHRA, courts must look to analogous federal law when resolving disputes brought under the Act. *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87–88 (Tex. App.—Austin, 1995, no writ). Federal law regarding disability discrimination by private employers is found in the ADA, and the Court looks to the analogous provisions of that act in interpreting the TCHRA in this case. *See id.* at 88.

To prevail on a discrimination claim under the ADA, a plaintiff must prove 1) that he has a "disability"; 2) that he is "qualified" for the job; and 3) that an adverse employment decision was made solely because of his disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996) (citing *Tyndall v. National Educ. Centers, Inc.*, 31 F.3d 209, 212–13 (4th Cir.1994)). The regulations enacted pursuant to the ADA define "disability" as a "physical or mental impair-

ment that substantially limits one or more of the major life activities of such individual," a "record of such an impairment," or "[b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (1996). The definition of a "disability" under the TCHRA is virtually identical. *See* TEX. LAB.CODE ANN. § 21.002(6). A person with a disability is "qualified" for a job if that person "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires" and "with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) (1996). In determining whether a plaintiff is a "qualified individual" with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job she holds. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). If the Court concludes that the plaintiff is not able to perform the essential functions of the job, the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Chandler*, 2 F.3d at 1394–94. If no reasonable accommodation would enable the plaintiff to perform the essential functions of her position, then she is not a "qualified individual" with a disability and is not subject to the protection afforded by the ADA. *Tyndall v. National Educ. Centers, Inc.*, 31 F.3d 209, 212–13 (4th Cir.1994).

"Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *Chandler*, 2 F.3d at 1393. Physical criteria, such as the ability to lift heavy loads, must be necessary and substan-

tially related to a person's ability to perform the essential functions of the job. Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience or past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3) (1996).

■ Defendant argues that Plaintiff cannot establish a prima facie case of discrimination under the TCHRA, or ADA, because he cannot establish the first two elements of the claim, that he has a disability and that he was qualified for the production technician position. Defendant claims that Plaintiff is not "disabled" within the meaning of the ADA because his physical impairment does not substantially limit any of his major life activities. Specifically, Defendant argues that Plaintiff, with the use of his prosthesis, can walk, speak, hear, see, breathe, learn, work, and take care of himself. Plaintiff, on the other hand, argues that his ability to perform these major life activities should be evaluated without the use of his prosthesis and that without it, he cannot perform the major life activity of walking. The Court need not decide this issue[1] because even assuming *arguendo* that Plaintiff has a disability under the ADA, he cannot meet the second element of his claim, that he was qualified for the position.

The Court finds that Plaintiff was not qualified for the production technician position

---

1. The Appendix to the regulations implementing the ADA discusses whether a disabled person's ability to perform major life activities should be determined with or without regard to mitigating devices such as prostheses. The Appendix is not part of the regulations themselves but is the EEOC's interpretation of those regulations. The Court notes that under the EEOC's interpretation, "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. Pt. 1630, App. § 1630.2(j). The Appendix specifically states that "[a]n individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices." Id. It is interesting to note that while both parties frequently cited the Appendix, neither party referred to this specifically applicable example.

for which he applied because he could not perform the essential functions of the position, nor could reasonable accommodations be made in the position so that he could perform them. The production technician position at a chemical plant is a physically demanding job, which is performed in rotating twelve-hour shifts. According to Defendant's "Occupational Demands/Physical Requirements Checklist" and the affidavit of Carl Davis, the Operating Supervisor of the HDI II/DES–W area, approximately sixty-seven percent of a coatings area production technician's job is performed outside. This outside work takes place in the HDI II/DES–W units, which are two, five-story metal buildings. Thirty to sixty percent of the duties in these units involve sitting, standing, walking, ascending and descending stairs, turning wrenches and valve handles, and bending. In these outdoor units, a technician must adjust plant equipment, climb over large piping and scaffolding, and move over raised walls and between tanks or vessels. Once a week, a technician must climb the caged ladder of an eighty-four-foot tank to monitor a gauge. Two or three times a month, a technician must climb the caged ladder of a forty-foot tank to adjust a valve. Technicians are also often required to lift or carry heavy equipment or to sometimes wear heavy protective gear including a slicker, rubber boots, and a breathing apparatus. This gear is especially required when there is an operational error, equipment malfunction, or a "shut-down." During these times, a technician must be able to move quickly between floors and perform his duties while wearing the protective gear. Moreover, during an emergency situation, a technician must be able to move quickly throughout the unit to fix the problem while wearing the protective gear and be able to rescue other personnel.

As noted above, at the time Plaintiff applied for the position, his company medical file contained a letter from his doctor significantly restricting his work activities. He was forbidden to climb ladders and was limited to climbing only one flight of stairs. His doctor instructed the company that he should stand no more than four hours and sit whenever necessary. He was also forbidden from lifting anything heavier than fifty pounds. Moreover, he was instructed to work only eight-hour shifts and not to work overtime. At the time of Plaintiff's application, these restrictions had not been removed or modified. Plaintiff argues that Defendant's reliance on this 1984 letter was improper because his file contained two subsequent medical documents in which he was released to "regular duty" without restrictions. The Court is unpersuaded by Plaintiff's argument because at the time of the issuance of these later releases, Plaintiff's "regular duty" was that required by his non-physically-demanding, seated clerical position and no restrictions were placed on his ability to perform that job. These documents were not intended to release him to do any kind of job he wanted within the plant.

The Court notes that Defendant gave Plaintiff an opportunity to clear these medical restrictions by giving him a job description so that his doctor could evaluate his abilities. Plaintiff asserts that the form was "useless" to his doctor. What Plaintiff fails to mention, however, is that he did present the form to his doctor, who expressed disapproval at Plaintiff's desire to transfer to the production technician position. Specifically, Plaintiff's doctor stated: "He [Plaintiff] wants to go from a desk job to an outside technician's job. I told him that I didn't think that made much sense if he was still having significant problems with his prosthesis. I think that working outside will only aggravate this." (8/17/94 Progress Note of Dr. McGarey, MacGregor Medical Association). According to Plaintiff's own doctor, Plaintiff was experiencing "significant problems" with his prosthesis near the time he applied for the technician position and was advised that an outdoor position was not suitable for him. This information is significant evidence that Plaintiff was not qualified for the production technician position.

More than this, however, the Court finds dispositive the fact that at the time he applied for the position, Plaintiff had in effect significant medical restrictions on his work activities. Plaintiff was restricted in stair climbing, ladder climbing, and heavy lifting, all essential functions of the production technician position. Moreover, Plaintiff was re-

stricted to eight-hour shifts and no overtime, and the technician position required twelve-hour shifts and overtime one day a week. Plaintiff's medical restrictions clearly prohibited him from working these hours and performing the above-listed functions of the job. Defendant did not base its denial of the position on myths or stereotypes, as Plaintiff claims, but rather relied on the medical restrictions imposed by Plaintiff's own doctor. The Court has no choice but to find that this reliance was proper and that because of these medical restrictions, Plaintiff could not perform the essential functions of the production technician position. Moreover, the Court notes that Plaintiff could pose a safety threat to himself or others in the event of an emergency if Plaintiff was not able to quickly evacuate the unit or if he was unable to assist another worker by dragging or carrying him to safety. For this reason and those discussed above, the Court finds that Plaintiff was not qualified for the production technician position because he could not perform the essential functions of the job.

■ As the Court has concluded that the Plaintiff is unable to perform the essential functions of the production technician job, the Court now turns to the question of whether any reasonable accommodation by Defendant would enable Plaintiff to perform those essential functions. *Chandler*, 2 F.3d at 1393–94. The ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *Bradley v. University of Tex. M.D. Anderson Cancer Center*, 3 F.3d 922, 925 (5th Cir.1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *see also* 29 C.F.R. § 1630.2(*o*) (1996). "Such redefinition exceeds reasonable accommodation." *Bradley*, 3 F.3d at 925. It is important to note that Plaintiff in this case seeks no accommodation but rather believes that he can perform the production technician job without any accommodation. The Court admires Plaintiff's determination and desire to return to a physically challenging job. As discussed above, however, the Court is of the opinion that Plaintiff cannot perform the essential functions of the production technician job without reasonable accommodation. The Court further finds that no reasonable accommodation exists for Plaintiff that would

enable him to perform those functions. Climbing stairs, climbing ladders, standing, and lifting heavy equipment are essential functions of the job, and in order to accommodate Plaintiff, Defendant would have to eliminate or reallocate these essential functions. These functions cannot be eliminated, and it would place an onerous burden on other production technicians to reallocate these functions to them. If Plaintiff did not perform these functions, he would essentially not be a production technician. The ADA does not require the elimination or reallocation of essential functions and neither will this Court. For this reason, the Court finds that no reasonable accommodation exists that would enable Plaintiff to perform the essential functions of the position he sought and that he was therefore not qualified for the position.

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**. Each and every claim asserted by Plaintiff is **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued by the Court this date, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**. Each and every claim asserted by Plaintiff is **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**