## FEDERAL UNDERWRITERS EXCHANGE v. TUBBE.

### No. 5614.

Court of Civil Appeals of Texas. Amarillo.

April 24, 1944.

Rehearing Denied May 29, 1944.

474

McLeroy & McLeroy, of Center, and Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Vernis Fulmer, of·Nacogdoches, for appellee.

PITTS, Chief Justice.

This is a compensation suit filed by appellee, Jack Tubbe, against appellant, Federal Underwriters Exchange, in the District Court of Shelby County on November 23, 1942, alleging total and permanent disability as a result of an injury sustained on June 29, 1942 while appellee was working for San Augustine Manufacturing Company and engaged in the course of his employment.

The case was tried April 8, 1943 before a jury which found appellee totally and permanently incapacitated as a result of the injury; that appellee was not suffering from disease or ailment prior to his injury; that appellee's incapacity was the result of the injury he received and not due wholly or in part as a result of disease or ailment prior to his injury; that due notice of the injury was given; that he had not worked substantially the whole year immediately preceding the date of his injury in the same or similar work and that no other employee of the same class had so worked in the same or similar employment for said period of time in the same or neighboring place; that $35 per week would fairly represent an average weekly wage for appellee at the time; that hardship and injustice would result to appellee if the compensation allowed to him be not paid to him in a lump sum rather than in weekly installments.

Upon the verdict of the jury the trial court rendered judgment in favor of appellee for total and permanent incapacity and allowed compensation at the rate of $20 per week for 401 weeks but awarded the same in a lump sum of $6,749.71, from which judgment appellant perfected an appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this court by the Supreme Court of Texas.

The record discloses that appellee was 48 years of age, had a wife and nine children, with only four of said children remaining at home, whose ages ranged from six to seventeen years; that he was working for San Augustine Manufacturing Company as a foreman over a crew of men on June 29, 1942 scaling logs in the woods and getting out timber; that because of the dense growth of shrubs or thicket ap-

pellee was walking a log in connection with his duties when he heard a noise that sounded like a diamond rattle snake, which were plentiful in that section, and he started to make a quick step to get away when his foot slipped and he fell across the log, hurting his back, which resulted in an injury to his kidneys. (The record disclosed that a further investigation revealed that the hissing noise heard by appellee was a bunch of young buzzards in a nest found in an old hurricane stump hole nearby. Every East Texas boy has had occasion to flinch and jump at the sudden hissing sound of a nest full of young buzzards.) The record further disclosed that the employer was providing transportation for appellee and the other employees to and from their work; that their work was a little scattered and conducted in various places; and that they often traveled 35 to 110 miles per day, traveling on an average of about 75 miles per day, all of which transportation was furnished by the employer. Appellee testified, over the objection of appellant, that it would have cost him 2¢ or 2¼¢ per mile if he had been required to furnish his own conveyance or ride the bus to and from work daily.

Appellant complains first in points 1 and 2 that the trial court erred in permitting appellee to testify as to what the cost of transportation to and from work would have been to him if such had not been furnished by his employer and that the said court erred in entering judgment for appellee "for compensation at the rate of $20 per week, based on the verdict and answer of the jury to special issue No. 14, there being no legal evidence to support such finding and it being contrary to the weight and preponderance of the legal evidence introduced in the trial."

The jury found in answer to special issue No. 14 that $35 per week would fairly represent an average weekly wage for appellee at the time of his injury. It seems that the testimony was admitted about the transportation of appellee and other employees to and from work by the employer and the cost to appellee for such transportation if such had not been furnished by the employer because of the provisions of the law in first subdivision 4, section 1 of article 8309, Vernon's Annotated Revised Civil Statutes of Texas, which says: "Said wages shall include the market value of board, lodging, laundry, fuel, and other advantage which can be estimated in mon-

ey, which the employee receives from the employer as part of his remuneration."

Appellant contends that the above provision of the statute authorizing a consideration of "other advantage which can be estimated in money," in fixing weekly wages in compensation cases, does not apply in this case since it was not the duty of the employer to furnish transportation to appellee and that no more than the actual cost of such transportation could have been admissible as evidence for consideration if it were the duty of the employer to transport appellee to and from work. Appellant complains that the jury must have considered the testimony of appellee as to the cost of his transportation to and from work if such had not been provided by his employer as a part of his wages in arriving at a weekly wage rate of $35 per week in answer to special issue No. 14. Appellee pleaded $35 per week as his average weekly wage and the jury probably arrived at the figure fixed by them from both the pleadings and the evidence.

The record does not disclose whether or not the contract of employment between appellee and the employer made any provision for transportation to and from work but it has been held that in a compensation case the provisions of the compensation statute impliedly become a part of the contract of employment. Casualty Underwriters v. Whitman, 135 Tex. 37, 139 S.W.2d 261; and Patton v. New Amsterdam Casualty Co., Tex.Com. App., 36 S.W.2d 1000.

It seems that there as been no specific rule or guide given to determine what facts may or what facts may not be considered in fixing a fair and just weekly wage rate in a compensation case as contemplated by our statutes. It seems that the question of weekly wage rate is not always a matter of mathematical calculation but must be fixed by the jury after a thorough consideration of all the facts and circumstances in connection with the case that will aid them in arriving at a just and fair wage rate. Southern Underwriters v. Buxton et al., Tex.Civ.App., 136 S.W.2d 264; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356; and Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488.

The evidence shows that appellee's employer was paying him $100 per

month prior to his injury and providing transportation for him as an additional advantage. The question of a just and fair weekly wage rate in such a case is a question of fact for the jury. There is no indication of any prejudice on the part of the jury in this case and no charge made of any prejudice of any juror. The jury found that appellee had not worked substantially a year preceding his injury and that no other employee of the same class had so worked in the same or similar employment. They therefore had little to guide them in attempting to fix a fair and just wage rate but, under all the facts and circumstances in connection with the testimony in the case, and under all the authorities, we believe the evidence supports the finding of the jury and that the trial court properly fixed the weekly compensation rate at $20. Art. 8306, § 10, and art. 8309, § 1, subds. 1 to 5, Revised Civil Statutes of Texas. Appellant's first and second points are therefore overruled.

Appellant complains in its third and fourth points that the trial court erred in permitting Dr. L. E. Griffin to testify over the objections of appellant that in his opinion appellee's disability was total and permanent and in entering judgment for appellee for total, permanent incapacity based on findings to that effect by the jury.

The record discloses that appellee passed blood from his kidneys within ten minutes after his injury; that he soon began suffering with a pain in his back, continued to pass blood from his kidneys with his condition growing worse and that he had Dr. Stephen B. Tucker, who testified for appellant, call to see him in his home on June 30, 1942 (next day after his injury) and that he later went to see Dr. L. E. Griffin. Appellee testified at length about his injury, his condition, his suffering, his attempts to get relief and that he gave a history of the case to both Dr. Griffin and Dr. Tucker. Other witnesses corroborated his testimony.

Dr. L. E. Griffin testified that he had examined appellee on June 27th (two days before his injury) for a run-down condition, while he was examining and treating appellee's wife on the same day; that he made a urinalysis and found his urine normal; that he found nothing seriously wrong with appellee other than he appeared a little over-worked and needed more rest; that appellee visited him about four weeks later for an examination and told him he had suffered an injury; that he got a history of the case, made an examination of him, analyzed his urine and found evidence of kidney infection; that he found blood, a little pus and albumin in the urine; that he learned he was under treatment of Dr. Stephen B. Tucker and told him to continue the treatment of Dr. Tucker; that he later examined appellee several times and found his kidney condition unchanged and that appellee looked run-down, underweight and did not look like the same man; that he examined appellee last about three or four weeks prior to the trial and found no signs of improvement; that, in his opinion, based on his objective findings, appellee was totally disabled and that such disability was permanent. Dr. Griffin testified on cross-examination that he made the same character of examination and test of appellee each time but knew that he was under treatment of Dr. Stephen B. Tucker and he did not recommend any further treatment than he was getting.

Dr. Stephen B. Tucker was called by appellant and testified that he visited appellee first in his home on June 30, 1942 and found him complaining of pain in his back, lower part of his stomach and passing blood in his urine; that he gave him some medicine and told him he should be examined and have his condition checked; that some week or two later he saw appellant again in the hospital with about the same complaint; that he made a general examination of appellee, including X-ray study of his kidneys and found him suffering from "hydronephrosis, the dilatation of the pelvis of the kidney on the right side"; that he was passing blood and clots in his urine and visual infection was found; that he was in the hospital for several days the first time and came back for a short stay in the hospital a second time; that he took X-ray pictures of appellee on several occasions and had examined and treated him continuously since he left the hospital; that his condition could have been caused by an accident; that his kidney condition had improved but he had not gained any weight and he still complained of pain across his back and that it appeared he would recover under proper treatment.

■■ There is no evidence tending to show that Dr. Griffin examined appellee for the purpose of qualifying as a wit-

ness, and it appears from the record that he testified from his own knowledge, basing his opinion on the discoveries he made from his own examination of appellee. It is our opinion that the testimony of Dr. L. E. Griffin was largely corroborated by that of Dr. Stephen B. Tucker but that Dr. Griffin's testimony was admissible whether corroborated or not. We also believe the evidence supports the findings of the jury on the issues of total and permanent disability. Appellant's points 3 and 4 are therefore overruled. Traders & General Ins. Co. v. Burns, Tex.Civ.App., 118 S.W. 2d 391; Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332; and Southern Underwriters v. Blair, Tex. Civ.App., 144 S.W.2d 641.

In its fifth point, appellant complains that the trial court erred in refusing to allow its attorneys a reasonable length of time for preparing and presenting its objections and exceptions to the charge of the court and filed its bill of exception to that effect, which bill of exception bears a long qualification by the trial court, followed by approval, to which qualification by the court appellant did not except and about which it has not complained.

The record discloses that after appellee had closed his testimony the court recessed at about 11 o'clock a. m. to wait for witnesses and during the recess prepared a part of the charge, consisting of the usual instructions and definitions, together with special issues Nos. 1 to 16, inclusive, and handed them to attorneys for appellants at about 2:45 p. m.; that soon thereafter the witnesses came and the trial proceeded; that the evidence was closed about 4 o'clock p. m; that soon thereafter the trial court handed the remainder of the charge, containing 21 issues in all, to attorneys for appellant and allowed them one hour and thirty minutes to examine the charge and object and except thereto during which time the court was in recess; that appellant's attorneys excepted because of the short time allowed by the court but did not ask for more time and at the expiration of one hour and thirty minutes they appeared in court with their objections and exceptions properly prepared, which were examined by the trial court, passed on and filed for record.

The matters about which appellant complains are regulated by Rules 272, 273, 274, 277 and 279 of the Texas Rules of Civil Procedure. The time allowed attorneys to examine the court's charge and prepare exceptions and objections thereto is discretionary with the trial judge, who should fix a reasonable time under all the circumstances. Unless a trial judge abuses his discretion in such matters his judgment should not be disturbed for that reason alone.

It appears to us that appellant's attorneys complied with the request of the trial judge without difficulty and that appellant has failed to show any harm done as a result of the time allowed its attorneys by the trial judge to examine, except and object to the court's charge and its fifth point is therefore overruled.

Appellant complains in its sixth point that the trial court erred in accepting the verdict of the jury and rendering judgment for appellee thereon without requiring the jury to answer appellant's special requested issue No. B, submitted to them by the trial court along with the main charge, which said special requested issue No. B was as follows: "Do you find from a preponderance of the evidence that the disability of the plaintiff, Jack Tubbe, if any you have found is not a result of an injury sustained by him prior to June 29, 1942?"

In our opinion there is no evidence that appellee sustained an injury prior to June 29, 1942, but, on the contrary, the evidence tends to show that he did not sustain any such injury. Therefore, the evidence did not raise the issue submitted in appellant's special requested issue No. B, and we believe the trial court so decided after having submitted the same, which accounts for his failure to require an answer to the same from the jury. In answer to other special issues submitted by the court in the main charge, the jury found that appellee received an injury while in the course of his employment on June 29, 1942; that he was totally incapacitated as a result of said injury; that his total incapacity began on June 29, 1942 and was permanent; that he was not suffering from any disease or ailment prior to June 29, 1942; and that his incapacity was not caused wholly or in part by any disease or ailment he may have sustained prior to June 29, 1942.

In our opinion, the trial court submitted in the main charge all the issues raised by the evidence bearing any relation to the question of any injury sustained by ap-

pellee and such issues were answered by the jury to the effect that appellee's incapacity was due wholly to the injury received on June 29, 1942. There is no error shown by appellant's sixth point and the same is therefore overruled.

We have carefully considered all of appellant's assignments of error and the record and find no reversible error. The judgment of the trial court is therefore affirmed.