# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0103
════════════

KING FISHER MARINE SERVICE, L.P., PETITIONER,

v.

JOSE H. TAMEZ, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued December 5, 2013**

JUSTICE BROWN delivered the opinion of the Court, in which JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE LEHRMANN, and JUSTICE BOYD joined.

JUSTICE GUZMAN filed a dissenting opinion, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, and JUSTICE DEVINE joined.

In this case we consider whether a trial court must entertain charge objections up to the time it charges the jury or whether it acts within its discretion in setting an earlier deadline. We also consider whether sufficient evidence supported the jury's finding that an injured seaman was following a specific order and was therefore excepted from contributory negligence. The court of appeals concluded the trial court acted within its discretion in refusing to hear a last-minute charge objection and that sufficient evidence supported the jury's specific-order finding. For the reasons below, we affirm.

# I

Jose Tamez was working as a welder on board the *Leonard M. Fisher*, a dredging vessel operated by King Fisher Marine Service, L.P., when he injured his left arm helping two crew members lift a large and heavy socket-wrench assembly. The assembly, which consists of a long shaft inserted into the edge of a large socket, is used to loosen and tighten a nut that secures a "cutterhead" to the ship. The cutterhead extends from the ship to the floor of the channel that is being dredged. The crew must periodically unattach and reattach the cutterhead to accommodate extensions that enable it to reach the desired depth. Attaching or unattaching the cutterhead requires the assistance of several crew members. Following the attachment, a crew member welds a cap over the nut to hold it in place.

The crew was in the process of reattaching the cutterhead when Tamez was injured lifting the socket while two crewmates, Captain Jorge Cordova and Deck Captain Ricardo Delgado, lifted the shaft. The three men were the only witnesses to the incident. Delgado testified he remembered essentially nothing, leaving Tamez and Cordova to offer their respective accounts of what happened.

Tamez testified he had finished cutting a cable near the cutterhead and was carrying his welding torch when he walked around the cutterhead to find Cordova and Delgado "trying to remove the socket and the shaft with their hands" while the assembly "was almost falling." Tamez testified Cordova "demanded, yelled out for [him] to help them fast because it was going to fall." Tamez further recalled, "I had the torch on the right arm, so I used my left arm to help them." He did not stop to set down his torch, Tamez said, "[b]ecause [Cordova] yelled. It was to do it fast."

Cordova agreed he ordered Tamez to assist, but testified he and Delgado had not attempted to lift the assembly before he called on Tamez to help, at which time the three men lifted the assembly together only after Tamez was "in position." Cordova testified he and Delgado would not have attempted to lift the socket without Tamez because they needed Tamez, the welder, to weld the cap over the nut once it was in place. Cordova further testified that he twice asked Tamez if he was ready to lift and that Tamez was not holding his welding torch at the time. Lifting the assembly with one hand, Cordova testified, would be impossible.

Tamez successfully removed the socket but later reported he was hurt in the process. He sued King Fisher under the Jones Act, 46 U.S.C. § 31014, arguing he was injured working under a specific order to lift equipment that the crew should have lifted with mechanical assistance or with additional manpower. Under maritime law, a "specific order" is one in which the seaman is ordered to do a specific task in a specific manner or is ordered to do a task that can be accomplished in only one way. *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 166–67 (Tex. 2012). When a seaman is carrying out a specific order, his damages may not be reduced by a finding of contributory negligence. *Id.* at 166. King Fisher denied Tamez was working under a specific order and argued he was contributorily negligent. The jury found Tamez was working under a specific order to lift the socket and awarded him $420,000, but also found him 50% at fault for his injuries. Based on the jury's specific-order finding, however, the trial court did not reduce Tamez's award.

On appeal, King Fisher argued the evidence was insufficient to support the jury's specific-order finding and that the trial court abused its discretion in refusing the specific-order definition that King Fisher proposed adding to the jury charge. The court of appeals concluded both that there was

3

sufficient evidence to support the specific-order finding and that the trial court did not abuse its discretion in refusing the proposed definition as untimely. Before this Court, King Fisher reurges its argument that the trial court was bound to entertain its last-minute charge objection. In addition, King Fisher argues the court of appeals erred in its sufficiency review by relying on Ninth Circuit precedent to expand the narrow specific-orders exception beyond the boundaries this Court previously recognized in *Garza*.

## II

### A

We first address whether the trial court erred in refusing to consider for inclusion in the jury charge King Fisher's proposed definition of a specific order. King Fisher's request came the morning after the formal charge conference and minutes before the trial court would read the charge to the jury. Upon receiving King Fisher's objection to the charge and proposed definition, the trial court asked Tamez's counsel whether he had seen the offer. Counsel acknowledged seeing it but maintained he had not had enough time to verify that it was "the proper instruction in substantially correct form." The trial court then refused the instruction "mainly because it's not timely," adding that "we needed to have all this stuff done and in by yesterday."

When King Fisher's counsel protested that he was entitled under the Rules of Civil Procedure to lodge his objection, the trial court responded: "And that may be the rules, but my ruling to you was, everything needed to be in beforehand, and yesterday was the charge conference, and therefore, it needed to be done before the charge conference, not, you know, two minutes before I'm bringing in the jury." Indeed, as King Fisher's counsel finished making his objections to the charge at the

4

formal charge conference the previous afternoon, the trial court warned the parties: "[T]omorrow when we come in, I'm not going to mess with this any further . . . . [W]hen you leave, you better be very happy with it, or unhappy, but satisfied that we got everything in that reflects my ruling." The parties apparently understood the seriousness of this warning; when King Fisher's counsel offered the specific-order definition the next morning, he conceded his understanding "from the discussions yesterday that all [King Fisher's new] objections will be overruled." He added: "I apologize for not making [the objections] yesterday, and I appreciate the Court's ruling on them before the charge is read."

Nevertheless, King Fisher argues the trial court abused its discretion in refusing its proposed definition as untimely. According to King Fisher, both Rule 272 of the Rules of Civil Procedure and our precedent in *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235 (Tex. 1992), provide that King Fisher's objection was timely and preserved error on appeal. The court of appeals disagreed, concluding that the trial court afforded King Fisher ample opportunity to present its proposed instruction and that refusing the instruction on the morning the charge was to be read was not an abuse of discretion. *King Fisher Marine Serv., L.P. v. Tamez*, No. 13-10-00425-CV, 2012 WL 1964567, at *6 (Tex. App.—Corpus Christi May 31, 2012, pet. granted) (mem. op.).

**B**

We review *de novo* any question regarding the proper interpretation of Rule 272. *See Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 78 (Tex. 2014). A trial court's rejection of a

proposed definition is reviewed for abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000).

King Fisher argues that Rule 272 of the Rules of Civil Procedure mandates that a trial court accept objections to the charge up to the moment it is read to the jury and that trial courts have no discretion to alter this deadline. The trial court's only discretion in the matter, King Fisher maintains, is its latitude in determining when it will charge the jury, which in turn sets a concomitant deadline for objections to the charge.

Tamez, on the other hand, argues the trial court's discretion allowed it to set an earlier deadline for charge objections and that Rule 272 demands only that the trial court afford the parties a "reasonable time" to "examine and present objections" to the charge. The trial court gave King Fisher sufficient time to review the charge and make objections, Tamez argues, and the trial court acted within its discretion in refusing to consider King Fisher's objection, made just minutes before the trial court was to read the charge.

### C

Trial courts have "inherent power to control the disposition of cases 'with economy of time and effort for itself, for counsel, and for litigants.'" *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Accordingly, the "'discretion vested in the trial court over the conduct of a trial is great.'" *Id.* (quoting *Schroeder v. Brandon*, 172 S.W.2d 488, 491 (Tex. 1943)). This discretion empowers a trial court to fulfill "a duty to schedule its cases in such a manner as to expeditiously dispose of them." *Clanton v. Clark*, 639 S.W.2d 929, 930 (Tex. 1982).

6

Nevertheless, King Fisher argues Rule 272 prohibits trial courts from establishing a deadline for charge objections earlier than the reading of the charge to the jury. Rule 272 provides in pertinent part:

> The charge shall be in writing, signed by the court, and filed with the clerk, and shall be a part of the record of the cause. It shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto outside the presence of the jury, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived.

Tex. R. Civ. P. 272.

The rule provides that a trial court may not consider any objections made after the charge is read to the jury. But it does not follow that a trial court is obligated to consider *every* objection made before the charge is read to the jury. Instead, the plain language of the rule sets an outside limit for charge objections. Tamez correctly argues that objecting before the charge is read to the jury is a necessary, but not always sufficient, step toward having the trial court review the merits of the objection.

Rule 272 mandates trial courts to afford the parties a "reasonable time" to inspect the charge and present objections outside the presence of the jury. Nothing in the rule prohibits a trial court from setting a deadline for charge objections that may expire before it charges the jury as long as the deadline affords the parties a "reasonable time" to inspect and object to the charge. Rule 272's reliance on reasonableness invites, rather than restricts, trial-court discretion. Accordingly, while the rule strictly prohibits objections after the charge is read, it affords trial courts latitude in addressing

7

objections made before. And it is not surprising that many trial courts would prefer to avoid the confusion and scheduling difficulties that would arise if objections were allowed up to the moment the court plans to charge the jury.

**D**

Those courts of appeals which have encountered charge-objection deadlines all have one thing in common—none has questioned trial courts' authority to set such a deadline. Rather, in each case the inquiry focused on the reasonableness of the time allowed to review and object to the charge, which is exactly what the plain language of Rule 272 contemplates.

The earliest case in which a charge-objection deadline was at issue is *Federal Underwriters Exchange v. Tubbe*, 180 S.W.2d 473 (Tex. Civ. App.—Amarillo 1944), *rev'd on other grounds*, 143 Tex. 266 (1944). There, the trial court handed a portion of its charge to the parties during trial and the remainder after the close of evidence. *Tubbe*, 180 S.W.2d at 477. The parties were given an hour and a half to review and object to the charge. *Id.* One of the parties objected to the short period of time. *Id.* The court of appeals ultimately did not evaluate the reasonableness of the time allotted because it concluded the appellant failed to show any harm. *Id.* But the court of appeals never questioned the trial court's authority to set a deadline. Rather, citing Rule 272, the court of appeals noted that "[t]he time allowed attorneys to examine the court's charge and prepare exceptions and objections thereto is discretionary with the trial judge, who should fix a reasonable time under all the circumstances." *Id.*

The Amarillo court of appeals again encountered a charge-objection deadline in *Hargrove v. Texas Employers' Insurance Association*, 332 S.W.2d 121 (Tex. Civ. App.—Amarillo 1959, no

8

writ). After the close of evidence, the trial court presented the parties with the court's charge, and the parties lodged objections. *Hargrove*, 332 S.W.2d at 122–23. The trial court made a revised charge available for the parties the same day and told them further objections were due by 9:00 the following morning. *Id.* The plaintiff missed the deadline and did not object until the trial court convened the following morning and began charging the jury. *Id.* at 123. The court of appeals held the plaintiff waived complaint by failing to object before the trial court began charging the jury. *Id.* But it is noteworthy that no one argued the trial court's deadline was unreasonable. Instead, the court of appeals articulated the same understanding of Rule 272 as it had offered in *Tubbe*. *Id.*

In *Austin State Hospital v. Kitchen*, the trial court held an "initial charge conference," received objections, and then recessed for lunch. 903 S.W.2d 83, 89–90 (Tex. App.—Austin 1995, no writ). One of the parties returned from lunch with an additional objection, which the trial court overruled because it "came too late or should be overruled on the merits." *Id.* at 90. After concluding that the objecting party had preserved error under *Payne*, the court of appeals reviewed the trial court's decision for abuse of discretion. *Id.* at 93. The court of appeals concluded that because the trial court did not set a deadline in advance and did not rely solely on a "procedural technicality" in overruling the objection, the ruling was made on the merits of the objection. *Id.* Importantly, the court of appeals never held or suggested the trial court did not have authority to set a deadline for charge objections, only that it had not actually done so.

In *Deaton v. United Mobile Networks, L.P.*, the trial court conducted a nearly four-hour charge conference, during which the court combined portions of the parties' proposed charges and announced the court's charge would be submitted the following day. *See* 926 S.W.2d 756, 765 (Tex.

App.—Texarkana 1996), *aff'd in part, rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997). Counsel requested additional time to review the charge, and the trial court, after bemoaning counsel's "interminable and repetitious complaints," offered the parties an additional hour for review. *Id.* Claiming an additional hour was not enough, the Deatons' counsel declined the offer, and the trial court concluded the charge conference. *Id.* The court of appeals rejected any suggestion the trial court lacked authority to set a charge-objection deadline, noting instead that "[c]ounsel has directed this [c]ourt to no authority suggesting that the trial court erred by setting an ending time for objections." *Id.* Instead, the court of appeals properly limited its inquiry to whether the time allowed was reasonable and concluded it was.

Just a year later, the Texarkana court of appeals encountered another charge-objection deadline in *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568 (Tex. App.—Texarkana 1997, no writ). There, the court of appeals concluded the trial court did not abuse its discretion by giving counsel only thirty minutes to examine a charge before taking objections when most of the charge "had been in counsel's possession for four days and which had only been changed to consolidate some damage issues." *Id.* at 575–76. Once again, the court of appeals evaluated the reasonableness of the time given the parties but never questioned the trial court's authority to set a deadline in the first place.

Although none of these cases is on all fours with this case or binding upon this Court, they demonstrate that while several courts of appeals have encountered charge-objection deadlines, none has balked at the trial court's authority to impose them. Instead, each has simply reviewed whether the trial court gave the parties what Rule 272 requires—a "reasonable time" to review and object to

the charge. Rule 272's plain language has led to the courts of appeals' consistent analysis in this regard. We likewise conclude Rule 272 plainly grants trial courts authority to set a deadline for charge objections that falls before the reading of the charge to the jury. When such a deadline is set, we ask only whether a reasonable time was allowed to review and object to the charge.

**E**

Although King Fisher did not meet the trial court's charge-objection deadline, it did preserve error under Rule 272's requirement to object before the jury was charged and under the standard we set forward in *Payne.* 838 S.W.2d at 241. There is no question the trial court was aware of King Fisher's complaint before the jury was charged and ruled on it. Error was preserved, and the only remaining issue is whether the trial court's charge-objection deadline resulted in an unreasonable amount of time for the parties to review and object to the charge.

We find the time afforded was reasonable. King Fisher knew well in advance of trial that the specific-orders exception would be an issue in the jury charge. Tamez filed with the trial court eighteen days before trial a proposed jury charge including a specific-order question, putting King Fisher on notice that Tamez would push to have the question included. King Fisher responded with a "trial memorandum" six days later, arguing that the specific-orders exception did not apply.

Four days into trial the trial court held what the parties describe in their briefing as an informal charge conference. At that time, Tamez's counsel told the court the specific-order question was a significant point of disagreement between the parties. The trial court urged the parties to work together that evening to resolve charge issues in anticipation of a formal charge conference the next day.

11

At 9:05 the next morning, Tamez filed an amended proposed jury charge. After evidence closed shortly after noon, Tamez's counsel informed the trial court his new proposed charge contained modifications the parties agreed to the previous evening. The trial court apparently had not yet seen the new proposed charge and instructed the parties to return that afternoon for the formal charge conference. The record suggests the parties likely spent some of the intervening time working on the charge with the trial court off the record. At any rate, it is clear the trial court added the specific-order question to the charge before the formal charge conference began.

At the formal charge conference, King Fisher lodged three objections to the specific-order question, but never proposed a definition. The formal charge conference lasted nearly an hour, and near its conclusion the trial court admonished the parties that all objections should be made before the conference ended and that the trial court would not revisit the charge the next morning. Importantly, the trial court never set a deadline for the formal charge conference to end, nor did it limit the time the parties had to review its charge. It simply required the parties to make all their objections at the formal charge conference, and it did not end the formal charge conference until the parties had exhausted their objections. The parties were not under pressure to lodge objections by a time certain, nor was the formal charge conference adjourned under protest from either party.

Because the specific-orders exception was an issue between the parties in this case well before trial, the trial court's inclusion of a specific-order question in its charge could not have taken King Fisher by surprise. Even if the parties received the court's charge immediately before the formal charge conference, King Fisher does not argue anything in the charge departed from the trial court's prior rulings or that the trial court did anything more than capture what the parties had

12

already discussed and knew was coming. The parties knew the first order of business when the trial court reconvened the next morning was to charge the jury. Yet King Fisher did not offer its proposed definition until just before the trial court was to bring in the jury. Under these facts, the trial court provided the parties a "reasonable time" to review and object to the charge, and acted within its discretion in refusing as untimely King Fisher's proposed definition.

Though we hold the trial court did not abuse its discretion, we do not necessarily endorse its decision. Trial courts can and should encourage adherence to their deadlines. Keeping a trial on schedule benefits everyone involved—trial courts benefit from the ability to manage the demands presented by their overall docket, jurors benefit from a managed, efficient trial that minimizes what already is an imposition on their daily lives, and parties and their counsel benefit from the equity that follows clear expectations. Nevertheless, these interests should be balanced with a trial judge's ultimate duty to provide the jury with a legally correct charge.

This Court has previously observed that "[o]ne of the main purposes of Rule 272 is to enable the trial court to submit a proper charge to the jury and to have the prior benefit of counsel's objections so as to correct any errors that might otherwise occur." *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973). We also have recognized that the preparation of the charge comes "at that very difficult point of the trial between the close of the evidence and summation" and often forces counsel to navigate "complex, intricate, sometimes contradictory, unpredictable rules, just when counsel is contemplating the last words he or she will say to the jury." *Payne*, 838 S.W.2d at 240. Even the most skilled and experienced counsel will sometimes miss valid charge objections during informal and formal charge conferences. An objection that may seem obvious to an appellate

13

court perusing a cold record may occur to battle-weary trial counsel only when the fog of war has lifted after a long day in the courtroom, or simply after a decent night's sleep. Trial courts should therefore make every effort to entertain on the merits a charge objection brought in good faith after conclusion of the formal charge conference but before the charge is read to the jury.

In this case, there is no evidence King Fisher raised its last-minute objection in bad faith or that its objection was groundless or intended only to delay the proceedings. The trial court presumably could have entertained the objection at issue with minimal delay to the day's proceedings. In refusing to do so, the trial court potentially risked placing its own schedule above the integrity of the charge.

But we decline to fashion a rule constraining all trial courts based on the facts of this case. A mandate for trial courts to entertain objections lodged at any time up until the charge is read to the jury is at odds with the discretion built into the plain language of Rule 272. Moreover, it is not sound policy. The rule King Fisher proposes essentially would put attorneys in charge of the trial in the time between the formal charge conference and the reading of the charge to the jury. Under such a paradigm, counsel may not take the formal charge conference seriously or prepare studiously knowing the court is powerless to refuse objections made after the charge conference is over. Moreover, such a rule would cripple the trial court's ability to prevent intentional or unnecessary delay caused by objections brought after the formal charge conference.

These concerns are not merely speculative. In *Deaton*, the trial court complained of counsel's "interminable and repetitious" objections after laboring through a nearly four-hour charge conference. 926 S.W.2d at 765. When counsel requested additional time, the trial court offered

14

another hour. *Id.* Counsel declined, saying it was inadequate. *Id.* So the trial court ended the charge conference, only to have counsel appear the next morning with an additional forty pages of objections and proposed additional charges. *Id.* Under the rule King Fisher advocates, a trial court facing a similar situation must consider each objection on the merits, regardless of the frivolity of the objections or any delay they add to the trial.

To summarize, we hold that Rule 272 affords trial courts the discretion to set a deadline for charge objections that precedes the reading of the charge to the jury as long as a reasonable amount of time is afforded for counsel to examine and object to the charge. We agree with the court of appeals that the trial court provided a reasonable amount of time in this case. Accordingly, we affirm the court of appeals' determination that the trial court did not abuse its discretion in refusing King Fisher's last-minute objection and proposed definition for the specific-order question.

### III

Finally, we consider King Fisher's argument that insufficient evidence supported the jury's finding that Tamez was following a specific order when he was injured. Ordinarily, any damages recoverable by an injured seaman are reduced on a percentage basis by a jury's finding that the seaman's negligence contributed to his damages. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008). However, under admiralty law, recovery may not be reduced by contributory negligence if the seaman was responding to a specific order. *Garza*, 371 S.W.3d at 166.

King Fisher argues that the court of appeals relied upon a Ninth Circuit expansion of the specific-orders exception to conclude that sufficient evidence supported the jury's finding. In *Simeonoff v. Hiner*, the Ninth Circuit enlarged the specific-orders exception to cover a seaman who

15

responds to a general order in a perceived emergency situation, reasoning that "[a] seaman cannot safely pause to assess the dangers of responding to an urgent, general call for help from a superior." 249 F.3d 883, 890–91 (9th Cir. 2001).

However, the court of appeals' holding does not rest on the *Simeonoff* expansion. The court of appeals cites *Simeonoff* only once for the foundational proposition that "[i]n maritime law, comparative negligence bars an injured party from recovering damages sustained as a result of his own fault." *King Fisher*, 2012 WL 1964567, at *3 (citing *Simeonoff*, 249 F.3d at 889–90). The court of appeals never mentions the expansion *Simeonoff* created, nor did it apply *Simeonoff* to the facts of this case.

This Court expressly declined to consider the *Simeonoff* expansion under the facts presented in *Garza*. 371 S.W.3d at 167 n.13. And because there is sufficient evidence to support the jury's specific-order finding in this case even without help from the *Simeonoff* expansion, we will not consider it here. Accordingly, we limit our sufficiency review to the standard we articulated in *Garza*—the specific-orders exception "applies only when the seaman is ordered to do a specific task in a specific manner or is ordered to do a task that can be accomplished in only one way." *Garza*, 371 S.W.3d at 167. A seaman receives a specific order when his "only options are either to complete the task or disobey the order." *Id.* In conducting a sufficiency review in Jones Act cases, we are required to set aside our traditional legal-sufficiency standard in favor of one that vests the jury "with complete discretion on factual issues." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998) (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506–07 (1957)). Once an appellate court determines that some evidence about which reasonable minds could differ supports the verdict, the

appellate court's review is complete. *Id.* (citing *Tex. & Pac. Ry. Co. v. Roberts*, 481 S.W.2d 798, 800 (Tex. 1972)).

In *Garza*, a supervisor instructed Garza to retrieve some tools. *Garza*, 371 S.W.3d at 167. Garza testified there was only one route to the tools and, while walking there, the supervisor released a steel friction bar that hit Garza in the head from behind. *Id*. We held the jury could have concluded that the only way Garza could have avoided danger was to disobey his supervisor. *Id*. at 167.

King Fisher focuses on Tamez's testimony that, while still holding his welding torch, he lifted the socket using only his left arm. Because setting down the torch and lifting with both hands was an option available to Tamez, King Fisher argues he was not following a specific order. But Tamez's was not the only account of the accident. Cordova, one of the three witnesses to the accident, denied he and Delgado were struggling with the assembly before Tamez was ordered to help. Rather, Cordova testified all three men were in position and lifted the assembly together after Cordova twice asked Tamez whether he was ready to lift. Tamez was not holding his welding torch and lifted with both hands, Cordova testified. Cordova further testified there was "no way" Tamez would be able to lift the assembly with one hand.

Under Cordova's version of the events, he gave Tamez an order to lift the assembly that could be performed in only one way—lifting with both hands—which Cordova testified Tamez did. Based on Cordova's testimony, the jury could have determined that the only two options before Tamez was to lift the assembly with both hands (as doing so with one hand would be impossible) or disobey the order. Cordova's testimony furnishes "some evidence about which reasonable minds

17

could differ." *See Ellis*, 971 S.W.2d at 406. Accordingly, sufficient evidence supported the jury's specific-order finding.

* * *

Having concluded the trial court did not abuse its discretion in refusing to consider King Fisher's requested specific-order definition and that there was sufficient evidence to support the jury's specific-order finding, we reject both of King Fisher's arguments and affirm the judgment of the court of appeals.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: August 29, 2014