**Affirmed and Opinion Filed September 23, 2022**



**In The**
### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-21-00660-CV**

## IN RE THE COMMITMENT OF CHRISTOPHER ANDRE ELDER

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV19-70008-U**

## MEMORANDUM OPINION
Before Justices Smith, Nowell, and Osborne
Opinion by Justice Smith

Appellant Christopher Andre Elder appeals from a final judgment and an order of commitment rendered by the trial court on a jury's finding that appellant is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. In a single issue, appellant contends the trial court erred by restarting appellee State of Texas's direct examination of appellant. We affirm the trial court's final judgment and order of commitment.

## Factual and Procedural Background

In July 2007, a trial court found appellant guilty of sexual assault and aggravated sexual assault and sentenced him to confinement for ten-year and fifteen-year terms, respectively. The trial court ordered appellant's sentences to run concurrently, and he was scheduled to be released in May 2021. In August 2019, the State filed a petition alleging appellant is a sexually violent predator and requesting that he be committed for treatment and supervision pursuant to Chapter 841 of the Texas Health and Safety Code. *See id*.

The trial court held a jury trial on the State's petition in May 2021 during the COVID-19 state of disaster declared by Governor Abbott and under the Texas Supreme Court's related emergency orders. *See* Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 897, 897 (Tex. 2021); Thirty-Seventh Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 186, 186 (Tex. 2021). Appellant, his attorney, and the attorney for the State were physically present in the courtroom. The jury sat in the central jury room, which allowed for safe distancing. There, the jurors watched the courtroom proceedings on iPads.

Appellant was the State's first witness. The court reporter asked appellant to speak up; thereafter, the trial court asked him to speak up twice, both times explaining that the jury was having difficulty hearing his testimony. The trial court

2

subsequently called a recess[1] and resumed the trial with the jury physically present in the courtroom.  The trial court explained that it was necessary to start over with appellant's examination because jurors had not heard his full testimony.

Following appellant's testimony, the jury returned to the central jury room for the remainder of trial.  In a unanimous verdict, the jury found beyond a reasonable doubt that appellant is a sexually violent predator.  Based on that verdict, the trial court entered a final judgment and an order of civil commitment.  Appellant filed a timely motion for new trial, which was overruled by operation of law, and this appeal followed.

## Civil Commitment

Chapter 841 provides "a civil-commitment procedure for the long-term supervision and treatment of sexually violent predators."[2]  HEALTH & SAFETY § 841.001.  On the evidence presented at a trial, the factfinder must determine "whether, beyond a reasonable doubt, the [respondent] is a sexually violent predator."  *Id.* § 841.062(a).  A "sexually violent predator" is a "repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the person

---

[1]  It is unclear how much time had passed, but the reporter's record reflects that the trial court called the recess twenty pages into appellant's direct examination after asking appellant to speak up three and six pages into the examination.

[2]  The Texas Department of Criminal Justice begins the commitment procedure by notifying "an established multidisciplinary team of the anticipated release date of a person who is serving a sentence for a sexually violent offense and 'may be a repeat sexually violent offender.'"  *In re Commitment of Stoddard*, 619 S.W.3d 665, 669 (Tex. 2020) (quoting HEALTH & SAFETY § 841.021(a)).

likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a repeat sexually violent offender if the person has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). Predatory act means "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

### Trial Court's Decision to Restart Direct Examination

In his sole issue, appellant contends the trial court reversibly erred when it allowed the State to repeat a portion of his direct examination. Appellant asserts that the trial court's error "indelibly imprint[ed] [his] words onto the jury's minds, by allowing the State the opportunity for a 'second bite at the apple' over [his] objection."

We review a trial court's evidentiary rulings for abuse of discretion. *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *7 (Tex. App.— Dallas Feb. 20, 2018, no pet.) (mem. op.); *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied). A trial court abuses its discretion when it acts without regard to guiding rules or principles. *U-Haul Int'l,*

4

*Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). Even if a trial court abuses its discretion in making an evidentiary ruling, reversal is appropriate only if the error probably resulted in an improper judgment. *Id.*; TEX. R. APP. P. 44.1.

A trial court has great, but not unlimited, discretion over the conduct of trial. *King Fisher Marine Serv., L.P. v. Tamez*, 443 S.W.3d 838, 843 (Tex. 2014) (quoting *Dow Chem. Co v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam)). Texas Rule of Evidence 611(a) requires the trial court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." TEX. R. EVID. 611(a).

Citing Rule 611, appellant contends the trial court's decision to restart the direct examination failed to protect him from "harassment or undue embarrassment." *See id*. Appellant contends the State exploited the decision by improperly impeaching him with his initial testimony.

The record shows that the trial court attempted to conduct the whole trial with the jurors in the central jury room to best protect them from exposure to COVID-19. The jurors, however, had difficulty hearing appellant's testimony from the outset; he was asked to speak up three times. The trial court moved the jury from the central jury room to the courtroom, explaining that, "[i]n order to be fair to all the parties, it

5

is necessary that we start this over again with this witness." The trial court apologized "to those [jurors] who may have heard part of his testimony and have to hear it again." After overruling appellant's objection to the "redo," the Court explained that the restart was "necessary as a matter of technology and for no other reason."

After the restart, the State repeated its questions to appellant. The questioning was not harassing. Although appellant initially objected to the restart as "giving the State a second shot at cross-examination," he did not object thereafter to any of the State's questioning as harassing, unduly embarrassing, improper impeachment, or on any other basis.

Appellant's testimony clearly was important evidence of whether he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See, e.g.*, *In re Commitment of Perez*, No. 09-12-00132-CV, 2013 WL 772842, at *4 (Tex. App.—Beaumont Feb. 28, 2013, pet denied) (mem. op.) ("jury was entitled to infer current serious difficulty controlling behavior based on [the respondent's] past behavior, [the respondent's] testimony, and the experts' testimony"). Further, as factfinder, the jury's role was to "determin[e] the credibility of witnesses and the weight to be given their testimony." *Stoddard*, 619 S.W.3d at 668. The trial court reasonably attempted to ensure that jurors could hear all of appellant's testimony and, thus, fulfill their duty to determine the truth.

Accordingly, we conclude the trial court's decision to restart the testimony fulfilled its responsibility of exercising reasonable control over the mode of examining witnesses in accordance with Rule 611(a). *See* TEX. R. EVID. 611(a).

Appellant now suggests that the trial court instead should have asked the court reporter to read the record of appellant's initial testimony to those jurors who had not heard all of it. We agree that this may have been a preferable way to handle the technical problem presented. Nevertheless, under the circumstances presented, we cannot conclude that the trial court acted without regard to guiding rules or principles by restarting appellant's testimony in the physical presence of the whole jury.

Alternatively, assuming the trial court's decision had constituted an abuse of discretion, reversal would be appropriate only if the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1(a)(1). "In determining whether the erroneous admission of evidence probably led to an improper judgment, courts look to the role the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether contrary evidence existed that the improperly admitted evidence was calculated to overcome." *Waldrip*, 380 S.W.3d at 136.

To show he was harmed, appellant lists five instances of the State impeaching him with his initial testimony. For example, in his initial direct examination, appellant recalled being diagnosed with schizophrenia during his county jail time:

7

Q:      And do you recall when you were diagnosed with schizophrenia?

A.      During my county jail time, ma'am.

In his subsequent examination, the following exchange occurred:

Q.      And when were you first diagnosed with schizophrenia?

A.      After head blunt force trauma during incarceration, being handcuffed by a sergeant staff member correction officer, ma'am.

Q.      Do you recall telling me earlier that you were first diagnosed when you were in the county jail?

A.      That as well, yes, ma'am.

In another example, appellant's response directly contradicted his earlier testimony. During the initial direct examination, the State asked if appellant had "ever hit one of [his] romantic partners," and he responded "[n]ot to my knowledge." When asked the same question after the restart, appellant responded "ma'am, yes, ma'am." The State then asked if he recalled saying earlier that he had never hit one of his romantic partners, and he responded no.

To the extent the instances cited by appellant indicate he responded inconsistently, there were several other, also unobjected-to, instances of appellant testifying to an inconsistent or contrary versions of events. Appellant testified at trial that he had consensual sex with the victim of his sexual assault offense, but he previously wrote in a witness statement that she declined his "request for sexual favors" and he "respected that and exited." The State impeached appellant's trial

8

testimony by comparing it with contrary responses in his deposition testimony as follows:

| Trial Testimony | Deposition Testimony |
| --- | --- |
| • Appellant left high school because he had children | • Appellant left high school because he was 23 years of age |
| • Appellant was never suspended from school | • Appellant was suspended from school twice |
| • Appellant never sold drugs | • Appellant sold marijuana |
| • Appellant did not try to get his G.E.D. before he was arrested | • Appellant did try to get his G.E.D. before he was arrested. |

The jury also heard testimony from Dr. Kyle Clayton, a forensic psychologist who conducted an in-person evaluation of appellant and reviewed numerous records pertaining to appellant's offenses and time in confinement. Clayton identified a number of risk factors he considered in evaluating whether appellant has a behavioral abnormality that makes appellant likely to engage in a predatory act of sexual violence. Clayton found appellant was not a credible source of information based on his extremely inconsistent reporting of events, including events regarding his sexual offenses. These differing versions of events were significant in forming Clayton's opinion that appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Notwithstanding the instances of impeachment cited by appellant, evidence of his inconsistency in reporting events was substantial, and the jury was free to consider that evidence relevant to its determination that appellant has a behavioral abnormality. In its opening statement, the State told the jury appellant was "consistently inconsistent." Although the State asked appellant about the inconsistencies between his initial testimony and his testimony after the restart, it did not otherwise emphasize those particular inconsistencies. It referred generally to appellant's inconsistent versions of events during its closing argument, which overwhelmingly referred to Dr. Clayton's testimony. Under these circumstances, we conclude any error resulting from the trial court's decision to restart the State's direct examination was harmless and did not result in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *see also Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (erroneously admitted evidence is harmless if it is merely cumulative).

Accordingly, we overrule appellant's sole issue. We affirm the trial court's final judgment and order of commitment.

/Craig Smith/
CRAIG SMITH
JUSTICE

210660F.P05

10



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE THE COMMITMENT OF
CHRISTOPHER ANDRE ELDER

No. 05-21-00660-CV

On Appeal from the 291st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV19-70008-U.
Opinion delivered by Justice Smith.
Justices Nowell and Osborne
participating.

In accordance with this Court's opinion of this date, the final judgment and order of commitment of the trial court are **AFFIRMED**.

Judgment entered this 23rd day of September 2022.